*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE ALFADAWI, Minors.

UNPUBLISHED
July 18, 2025
9:29 AM

No. 371381
Wayne Circuit Court
Family Division
LC No. 2022-001555-NA

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Petitioner, the Michigan Department of Health and Human Services (DHHS), appeals by leave granted[1] the order denying termination of respondent's parental rights.[2] The trial court found grounds for termination exist under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury or sexual abuse of the child or child's sibling), (g) (failure to proper care and custody), (j) (reasonable likelihood of harm if returned to the parent), and (k)(*ix*) (sexual abuse as defined under MCL 722.622), but concluded that termination of respondent's parental rights was not in the best interests of the children. On appeal, DHHS challenges only the trial court's best-interests findings. Because the trial court failed to address the children's best interests, we vacate the court's best-interest analysis and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Respondent is the legal father of HHA, HuHA, ZHA, SHA, FHA, AHA, and LHA. In April 2022, Children's Protective Services (CPS) investigated allegations that respondent sexually assaulted HHA. HHA disclosed that respondent engaged in domestic violence against the mother

---

[1] *In re Alfadawi Minors*, unpublished order of the Court of Appeals, entered September 5, 2024 (Docket No. 371381).

[2] The mother of the minor children was not named as a respondent and is not a party to this appeal. Accordingly, "respondent" refers to respondent-father only. Non-respondent mother is referred to as "the mother."

after he returned home from work in the evening. The mother fled the home with two of the children and stayed overnight at a friend's house. HHA stated that respondent woke her up in the middle of the night and demanded that she sit on his lap. She refused his advances and managed a brief reprieve. But when she woke a few hours later, respondent was standing over her. Respondent demanded that HHA accompany him to his bedroom. He grabbed HHA's arm and dragged her to his bedroom. HHA fought back, grabbing the wall to pull herself away. Respondent pulled HHA into the bedroom and closed the door. Respondent made sexual remarks toward HHA, fondled her breasts, licked her neck, rubbed his penis on her vagina, forced her to sit on top of him while his penis was erect, and ejaculated. HHA was wearing pajamas during the incident. She stated that no penetration occurred. Respondent eventually stopped and apologized to HHA before HHA returned to her room. Respondent later sent HHA a text message indicating that he was sexually assaulted as a child.

HHA disclosed the sexual assault to her school counselor the next day. The school contacted the police and CPS. HHA provided a statement to the police and a screenshot of the text message respondent sent her. CPS agent, Mia Alston, conducted a forensic interview with HHA and scheduled a Kid's Talk interview for the following day. Officer Brock Bacher of the Dearborn Heights Police Department (DHPD) searched HHA's home and collected evidence of the assault, including HHA's pajamas, respondent's underwear, and bed sheets.

One day later, respondent went to the DHPD and requested to speak with an officer. Respondent told Bacher that he engaged in a verbal argument with the mother and admitted he assaulted the mother. Respondent was initially arrested for domestic violence. He was subsequently charged with four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, but the charges were dismissed when the mother and HHA purportedly failed to appear for his preliminary examination.

DHHS filed a petition requesting that the trial court authorize the petition, exercise jurisdiction over the minor children under MCL 712A.2(b)(1) and/or (2), order respondent removed from the home, and terminate respondent's parental rights to all of the minor children under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*ii*) (criminal sexual conduct involving penetration). Respondent conceded probable cause existed, and the trial court authorized the petition. The children were released to the care and custody of the mother. Respondent was ordered to not reside with the children, and the court suspended all of respondent's contact with the children.

At the combined adjudicative and dispositional hearing, HHA and the mother testified regarding the domestic violence incident and the sexual assault. HHA described respondent's history of physical abuse, explaining he had hit her with his fist on her arms and legs on multiple occasions. According the HHA, respondent physically abused all but the youngest two children and physically assaulted the mother in their presence. Both HHA and the mother testified that the house was safer without respondent present. HHA expressed concerns for the safety of her siblings around respondent. Alston opined that respondent posed a risk of harm to HHA and her siblings. DHPD officers testified regarding the criminal investigation. Additionally, Jennifer Jones, a Forensic Scientist with the Michigan State Police Crime Laboratory, forensically analyzed the evidence collected by the police. Jones determined that the front, outside of the underwear that respondent was allegedly wearing at the time of the sexual assault incident contained a "moderate

support" level of HHA's DNA. Respondent denied HHA's claims, stating she fabricated them with the help of the mother.

Before closing arguments, DHHS moved to amend the petition, removing MCL 712A.19b(k)(*ii*) and replacing it with MCL 712A.19b(k)(*ix*) as a ground for termination, which the trial court granted. The trial court found that grounds for jurisdiction were established under MCL 712A.2(b)(1) and (2). After noting that it found HHA's testimony to be credible, the trial court determined that there was clear and convincing evidence to support termination of respondent's parental rights to the minor children MCL 712A.19b(3)(b)(*i*), (g), (j), and (*ix*).

A best-interests hearing was held. The Family Assessment Services evaluation was admitted at the hearing. The clinician recommended that respondent's parental rights to all his minor children be terminated and that there be no further contact between the children and respondent. Aisha Searcy, the ongoing CPS specialist, testified that the children had improved emotionally and in school since respondent had been removed from the home. Searcy reported respondent failed to provide proof of his income and failed to engage in services. She reported that the children had little to no bond with respondent, did not ask about respondent, and did not express a desire to see him. According to Searcy, the mother stated she was fearful of respondent and indicated the children were living better lives without him. Searcy opined a custody order was insufficient to ensure the children's safety and stability. She noted respondent had "the authority and power in the relationship." Searcy opined that termination was in the children's best interests.

Alston also opined that a custody order in lieu of termination would not ensure the safety and well-being of the children, citing respondent's pattern of physical abuse toward the children and domestic violence. Alston noted respondent declined to provide for his children since the investigation began in 2022. Alston concurred with Searcy that respondent maintained authority over the mother, and agreed that termination was in the children's best interests.

Respondent denied sexually abusing HHA and denied abusing his children. He claimed his lack of sleep impacted his actions on the night of the incident. Respondent maintained that the mother lied in her testimony. He stated that he does not trust women, and claimed women make up stories.

During the best-interests analysis, the trial court stated it believed respondent was a "real parent" with "some flaws." The trial court asserted respondent's sexual abuse of HHA was inappropriate, but determined it was an isolated incident. The trial court found there was a power imbalance between respondent and the mother. However, the trial court concluded that a custody order would mitigate respondent's power, stating: "I want you to recognize that now that the Court's involved, you don't have that same level of power." The trial court determined that termination was not in the children's best interests and denied the petition. This appeal followed.

## II. BEST INTERESTS

DHHS argues that the trial court clearly erred by finding that termination of respondent's parental rights was not in the children's best interests. We agree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5) ("If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made."). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013).

"[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (cleaned up). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). Because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43.

The trial court clearly erred by focusing on respondent in its best-interests analysis. See *In re Schadler*, 315 Mich App at 411; *In re Moss*, 301 Mich App at 90. The trial court found that HHA was credible and that she was sexually assaulted by respondent. The trial court acknowledged that it was required to focus its analysis on the best interests of the children. But then the court focused on respondent instead. The court stated that respondent was not "an absentee parent," discussed respondent's state of mind during the sexual assault, characterized the sexual assault as an "isolated incident," and determined that respondent could have the capacity to change. Although HHA expressed concern for her own safety and her siblings' safety, the trial court did not address the children's safety or need for stability. In fact, the trial court failed to discuss most of the factors that this Court has recognized as pertinent to a best-interest inquiry in a termination of parental rights setting. This was clear error.

The trial court also erred by determining placement with the mother mitigated the risk respondent posed to the children's safety. Placement with a relative weighs against termination, but it is not dispositive. *In re Atchley*, 341 Mich App at 347. The mother testified that she did not wish to have a custody order with respondent. She expressed fear for the children if there was contact with respondent. HHA also expressed concern for her own safety and her sibling's safety. Alston opined that a custody order in lieu of termination would not ensure the safety and well-being of the children, citing respondent's pattern of physical abuse. Searcy expressed concerns about the power dynamic between the mother and respondent noting that respondent had "the authority and the power in the relationship." The Family Assessment Services clinician recommended that there be no further contact between the children and respondent. The trial court found credible the testimony concerning respondent's sexual abuse and domestic violence. The trial court also acknowledged that there was a power imbalance between the mother and respondent. Nevertheless, the trial court opted for a custody order in lieu of termination without considering the children's best interests. This was clear error.

We conclude that the trial court clearly erred by finding that termination of respondent's parental rights was not in the best interests of the minor children without addressing the children's best interests. Accordingly, we vacate the trial court's best-interest analysis, and remand this case to the trial court to promptly determine whether termination of respondent's parental rights is in the *children*'s best interests. See *In re Schadler*, 315 Mich App at 411; *In re White*, 303 Mich App at 714-716; *In re Moss*, 301 Mich App at 90; *In re Olive/Metts*, 297 Mich App at 41-43.

Vacated in part and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle

## Court of Appeals, State of Michigan
## ORDER

IN RE ALFADAWI MINORS

Docket No.    371381

LC No.        2022-001555-NA

Sima G. Patel
Presiding Judge

Michael J. Riordan

Brock A. Swartzle
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court shall promptly determine whether termination of respondent's parental rights is in the *children's* best interests.The proceedings on remand are limited to the best-interest analysis, as explained in more detail in the accompanying opinion.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Presiding Judge



A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 18, 2025
Date

Chief Clerk